# Daley v. Wingert, Appellant.

*Ejectment—Evidence—Conflicting evidence—Division line—Question for jury—Estoppel.*

In an action of ejectment to recover a strip of land claimed by the plaintiffs and over which the defendant had constructed a building, if the evidence is conflicting as to the exact location of the divisional line between plaintiffs' and defendant's lots, the disputed question must be submitted to the jury. In such a case if the defendant testifies that the plaintiff expressly assented to the building of the house on the disputed strip, and

such assent is expressly denied by plaintiff, the question of plaintiffs' estoppel is for the jury.

Argued Oct. 20, 1904.    Appeal, No. 302, Jan. T., 1904, by defendant, from judgment of C. P. Clearfield Co., Feb. T., 1901, No. 207, on verdict for plaintiffs in case of James J. Daley and Hugh A. Daley v. George H. Wingert.    Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and THOMPSON, JJ.    Affirmed.

Ejectment for a strip of land in DuBois Borough.    Before GORDON, P. J.

The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff.    Defendant appealed.

*Error assigned* was in entering judgment for plaintiff on the point reserved.

*Thomas H. Murray*, with him *James P. O'Laughlin, Hazard Alex. Murray* and *A. L. Cole*, for appellant.

*Frank Fielding*, with him *William C. Arnold*, for appellee.

OPINION BY MR. JUSTICE DEAN, December 31, 1904:

This was an ejectment for a lot of ground in borough of DuBois, Clearfield county.    The lot originally formed part of a tract of eighteen acres which belonged to one Rumbarger who conveyed the whole tract to John DuBois who contracted to sell a part to George Gorton; no deed appears to have been made for this part to Gorton.    On August 12, 1879, DuBois conveyed another part of the land by deed to Henry Fireman; that deed describes the land as bounded by Pentz's run on the west and extending east forty-one feet along Long avenue to a post and thence north by a line parallel with Evans street sixty feet.    Fireman went into possession and erected a livery stable on the lot and made some other improvements.    On March 22, 1881, Fireman by the same description as in his deed conveyed to R. and O. Emerick, and they on February 11, 1882, by the same description conveyed to George Wingert this defendant. After the date of Wingert's conveyance James and Hugh Daley, the plaintiffs, purchased from Gorton the remaining part of

the land.   So far as appears, although Gorton had no deed his
equitable right or·title was never disputed; but without an
intervening deed from him, plaintiffs took directly from DuBois
who by the record still held the legal title, a conveyance of the
lot adjoining the one conveyed to Wingert.    This deed is dated
January 20, 1885.    Some improvements were also put by them
on this lot.   In the spring of 1888 the town of DuBois and
the buildings on these two lots were destroyed by fire.    In the
month of June, 1888, Wingert erected his new brick hotel
building on his lot; it encroaches on and partly covers plain-
tiffs' lot for twelve feet on Long avenue extending back to a
point at a distance of thirty-eight feet from the avenue.    Plain-
tiffs then brought this ejectment.

They claimed defendant's possession was limited to forty-one
feet on Long avenue as fixed by his deed; the defendant
claimed that when his predecessor in title, Emerick, was about
to locate his building before the fire, in the year 1881, he asked
Gorton the prior owner of both lots to point out the line be-
tween them and Gorton designated the line by posts at front
and rear and that then Emerick placed his house within that
line ; that Wingert, this defendant, bought from Emerick in
1882; that the house was in the same place then and so stood
until the fire ; that then Wingert rebuilt after the fire about
on the line of the old house but nevertheless still within the
Emerick line.   While there is considerable evidence on the
part of defendant to show misleading conduct on part of plain-
tiffs and their predecessors in title, which to some extent was
rebutted by plaintiffs, still the evidence, both on the question
of the true location of the old division line, and on the question
as to whether plaintiffs or their predecessors in title had done
that which should estop them in equity from denying that
defendant's building was within the boundaries of his lot, was
for the jury.   The court left it to them in an entirely impartial
charge and they found for plaintiffs.   At the trial, however,
defendant's counsel had submitted a written point as follows :

" A.  As the testimony showing, that when the Emerick house
was built in 1881, it was placed two feet westerly of a line then
pointed out by Gorton, the predecessor in title to plaintiff.
That that house stood until the fire of 1888, six years after
defendant's purchase, and three years after plaintiffs' purchase,

and was located with its easterly side farther east than the easterly side of defendant's present brick building is not contradicted, the plaintiffs cannot recover, and the verdict must be for the defendant."

To this the court answered :

" Now, September 16, 1902, this case is submitted to the jury for verdict on the merits, subject to the opinion of the court on the legal questions raised by defendant's point A which is refused, as explained in charge, whether under the undisputed testimony on the points referred to the court should direct a verdict for defendant as a matter of law."

After further argument the court in opinion filed denied the point and entered judgment for plaintiffs on the verdict, and from that judgment defendant appeals alleging for error the refusal of the point.

It is argued earnestly by appellant's counsel that the facts stated in the point were undisputed at the trial ; the court thought differently and submitted to the jury to determine the truth of the dispute. We think such dispute fairly arose and that it was not one for the court to determine. It is conceded that the true division line was, very probably, that pointed out by Gorton to Fireman and which Gorton's son assisted in measuring; but this was before the fire, and whether defendant placed his building on this line is not clear. True, two witnesses for defendant testify that it was, but taking the distance of the Emerick house from Pentz's run, as testified to by plaintiffs' witnesses, the inference is irresistible, that defendant's witnesses were mistaken. The court could not take from the jury the consideration of a reasonable inference any more than it could take from them consideration of the credibility of a living witness. We think, therefore, no error was committed in leaving the testimony to the jury as to the true location of the division line.

As to the allegation, that plaintiffs are estopped from denying the location of the line as claimed by defendant, that also, from the contradictory character of the evidence, became a question for the jury ; not what constituted an estoppel for that was for the court, but if the jury found the facts, as one side or the other alleged, then either plaintiffs were estopped or they were not. This excerpt from the charge of the court

shows that the learned trial judge correctly stated the principle applicable to this evidence: " He (Emerick) testifies, that before erecting the building he talked with James J. Daley, one of the plaintiffs, about the line and asked him if it would be satisfactory to build four feet inside of the line of the Emerick house and he replied that it would. Well, now this is denied by Daley. He denies that this question was asked him and that the answer indicated was given by him. If you find from the evidence that it was, that Daley thus assented to that being a proper place for Wingert to build his house, and that relying upon that Wingert built it there, Daley would be estopped from denying that the house was built on Wingert's land and that would be an end of the case."

The court, in thus speaking, gave no precise definition of what in every case would constitute an equitable estoppel, but it did better by bringing to their understanding the point before them in this particular issue. Was or was not the plaintiff, as they found the facts, estopped from recovering this land because he mislead the defendant?

Under all the authorities, and they are very numerous, we think there was no error in refusing the point and submitting the evidence to the jury. All the assignments of error are overruled and the judgment is affirmed.